UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

MCKINLEY ROBINSON,            )
                              )
            Plaintiff,        )
                              )
       vs.                    )    No. 4:05CV702-DJS
                              )
THOMAS KING, JOHN OR JANE DOE #1, )
and JOHN OR JANE DOE #2,      )
                              )
            Defendants.       )

## ORDER

Pro se plaintiff McKinley Robinson is an inmate at the Potosi Correctional Center ("PCC"), and has filed this action under 42 U.S.C. § 1983 against defendant King and several John Doe defendants. Plaintiff claims several constitutional rights violations by defendant King which include: 1) initiating an investigation of plaintiff's involvement in a plot to murder PCC staff in retaliation for plaintiff's legal activities; 2) issuing false conduct violations against plaintiff in retaliation for plaintiff's legal activities; 3) informing plaintiff's parole board of defendant King's investigation in retaliation for plaintiff's legal activities; 4) violating plaintiff's due process rights when he allegedly assigned plaintiff to administrative segregation while the investigation was pending; and 5) violating plaintiff's equal protection rights by holding plaintiff in administrative segregation after plaintiff had passed a Computer Voice Stress Analysis

("CVSA").[1]  Now before the Court are several motions from both parties.  Plaintiff has moved to compel discovery [Doc. #35] and to strike his deposition taken by defendant King [Doc. #44].  Defendant King has moved for summary judgment [Doc. #46], to stay discovery, or, in the alternative, for a protective order [Doc. #52], and for a protective order [Doc. #58].  Defendant King in his motion to stay discovery correctly asserts that unless plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.  *See* Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).  This Court has discretion to order limited discovery concerning the issue of qualified immunity "if the plaintiff['s] allegations state a claim of violation of clearly established law and the parties disagree as to what actions the law enforcement officers took."  Lovelace v. Delo, 47 F.3d 286, 287 (8th Cir. 1997).

## Background

All matters set forth in defendant King's statement of uncontroverted material facts not specifically controverted by plaintiff are deemed admitted for the purpose of summary judgment.

---

[1] Plaintiff also brings these claims against John or Jane Doe #2.  In addition, plaintiff brings a claim against a John or Jane Doe #1 for violating plaintiff's First Amendment and Religious Land Use and Institutionalized Persons Act rights by refusing to serve plaintiff Halal meat in accordance with his Islamic faith.  The Court does not address the later claims as they were not brought against defendant King.

E.D.Mo. L.R. 7-4.01(E). The Court has viewed the facts in a light most favorable to the non-movant, observed the local rule as stated above, and construed plaintiff's pro se filings liberally. The following facts are thereby established for purposes of the summary judgment motion.

Defendant King is currently employed by the State of Missouri as an Institutional Investigator at Farmington Correctional Center. In December 2002, defendant King was the Institutional Investigator assigned to PCC. As part of his position, defendant King is a Certified CVSA Analyst.

On December 5, 2002, an inmate informant contacted a PCC custody staff person and came forward to let staff know of a plot to kill or take hostage Associate Superintendent Pat Smith, Chaplain Jerry Pearson, and Institutional Activities Coordinator Rick Secoy. The inmate informant identified by name offenders who were involved in the plot, including plaintiff. Corrections Supervisor I Dennis Mayberry, a Certified CVSA analyst, performed a truth verification test with respect to the initial inmate informant, and the inmate passed this truth verification test.

On December 6, 2002, defendant King interviewed the initial inmate informant. Based on the information provided by the initial inmate informant, the Department of Corrections emergency squad at PCC conducted a search of the entire institution. Defendant King observed the emergency squad's search. Custody staff found six to eight pieces of flat steel stock under a filing

3

cabinet in the library. This is where the initial inmate informant had indicated some of the weapon stock was being held until needed. The pieces of stock were unsharpened, and were approximately 1" x 10" x 1/8" in dimension.[2] In addition, the search revealed a sharpened steel shank in the chapel common area. The initial inmate informant had told investigators that one or more prison made weapons could be found in the chapel, without giving a specific location. The same day, plaintiff was assigned to PCC's administrative segregation unit pending an investigation into his involvement in the plot to murder staff or take staff hostage.

On December 9, 2002, defendant King interviewed plaintiff concerning his involvement in the alleged plot to kill staff or take staff hostage. Defendant King administered a CVSA to plaintiff and concluded that plaintiff was truthful in his responses to all relevant questions.

On December 19, 2002, plaintiff attended a hearing before a parole board. Plaintiff is serving two life sentences on two counts of First Degree Murder, a seventy-five year sentence for Assault with Intent to Kill with Malice, a twenty year sentence for Assault, and a five year sentence for Possession of a Weapon on Premises of a Correctional Institution. The parole board denied plaintiff's parole request because it found that his release would

---

[2] Plaintiff asserts that these steel shanks are parts of the metal cabinets in the library stored there by "the library service lady (Ms. Brooks) . . . for safe keeping." (Pl.'s opp. [Doc. #64] ¶8.)

4

deprecate the seriousness of his offense and because it did not appear to the parole board that there was a reasonable probability that plaintiff would "live and remain at liberty without again violating the law." (Def. King's Ex. F-2 [Doc. #47-14] at 34-35.) However, the parole board did note during the hearing that they were displeased with plaintiff because of the ongoing investigation.

On January 2, 2003, the Classification Hearing Committee held a hearing to consider plaintiff's continued confinement in administrative segregation. The Classification Hearing Committee assigned plaintiff to 30 days in administrative segregation pending the investigation into his involvement in the plot to murder staff.

On January 29, 2003, defendant King was named as a defendant in the Muhammad v. Kempker, Case No. 4:02CV1714-CDP, lawsuit, also before the United States District Court for the Eastern District of Missouri. However, plaintiff was not a named plaintiff in the Muhammad lawsuit. The following day, on January 30, 2003, defendant King notified plaintiff that he passed the CVSA examination conducted on December 9, 2002.

On February 28, 2003, the Classification Hearing Committee approved a nine (9) month extension of plaintiff's administrative segregation assignment pending the outcome of the investigation. On April 1, 2003, the committee decided to continue plaintiff's administration segregation assignment. Plaintiff

remained in administrative segregation until April 28, 2003. During plaintiff's administrative segregation, defendant King performed further intelligence information gathering and a second CVSA analyst verified plaintiff's initial CVSA results.

On April 2, 2003, Corrections Officer II Jamie Isgrigg issued plaintiff a conduct violation for violation of Rule #1, Murder (Conspiracy), Rule #2 Assault (Conspiracy), Rule #5 Riot, and Rule #19 Creating a Disturbance. On April 11, 2003, plaintiff's conduct violations were expunged. By October 22, 2003, plaintiff had returned to the general population and had not received a violation for conspiracy to murder or assault staff.

## Discussion

In considering a motion for summary judgment, the Court must "view all of the evidence in the light most favorable to the nonmoving party and [will] give that party the benefit of all reasonable inferences to be drawn from the facts disclosed in the pleadings." Reich v. ConAgra, Inc., 987 F.2d 1357, 1359 (8th Cir. 1993). "Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Id. "Although the moving party has the burden of demonstrating the absence of genuine issues of material fact, the 'nonmoving party may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial.'" Burchett v. Target Corp.,

340 F.3d 510, 516 (8th Cir. 2003) (quoting Rose-Maston v. NME Hosps., Inc., 133 F.3d 1104, 1107 (8th Cir. 1998)).

Defendant King asserts that he is entitled to qualified immunity from liability because his actions did not violate any clearly established constitutional rights of plaintiff. "Government officials performing discretionary functions are shielded from liability for civil damages by qualified immunity as long as their 'conduct does not violate clearly established [federal] statutory or constitutional rights of which a reasonable person would have known.'" Cole v. Bone, 993 F.2d 1328, 1332 (8th Cir. 1993) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The Court must determine whether defendant King's actions were "objectively legally reasonable in light of the legal rules that were clearly established at the time the action[s] occurred." Id. (citing Anderson v. Creighton, 483 U.S. 635, 639 (1987)); Andrews v. Fuoss, 417 F.3d 813, 816 (8th Cir. 2005). The threshold question of law is whether defendant King has violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001). Upon review of plaintiff's claims, the Court finds as a matter of law that defendant King has not violated any clearly established constitutional right of plaintiff. The Court will dismiss all of plaintiff's claims against defendant King for the reasons stated below.

**A. Plaintiff cannot show that but for plaintiff's legal activities defendant King would not have initiated the investigation**

Plaintiff alleges that defendant King initiated an investigation of plaintiff's involvement in a plot to murder PCC staff in retaliation for plaintiff's legal activities involving Muhammad v. Kempker in violation of plaintiff's First Amendment rights. A prison official's action violates 42 U.S.C. § 1983 when performed in retaliation for "the exercise of a constitutionally protected right . . . even if the act, when taken for a different reason, would have been proper." Madewell v. Roberts, 909 F.2d 1203, 1206 (8th Cir. 1990) (citations omitted). Plaintiff must first show that he engaged in constitutionally protected conduct and then show that but for that conduct defendant King would not have retaliated against him. Rouse v. Benson, 193 F.3d 936, 940 (8th Cir. 1999); Naucke v. City of Park Hills, 284 F.3d 923, 928 (8th Cir. 2002).

Defendant King was not made a party to the Muhammad v. Kempker case until over a month and a half after he initiated his investigation of plaintiff. Furthermore, defendant King only initiated his investigation of plaintiff after an inmate informant told prison officials that several inmates, including plaintiff, were plotting to murder or take hostage three prison officials.[3]

---

[3] Plaintiff does not deny the existence of the informant and even claims to know the informant's identity.

Given these allegations and defendant King's position as an investigator at the PCC, plaintiff cannot show that but for plaintiff's alleged involvement in the Muhammad v. Kempker case and its associated grievance filings defendant King would not have initiated the investigation of plaintiff.

**B. Evidence provides a sufficient basis for the conduct violation issuance**

Plaintiff asserts that defendant King orchestrated or caused Corrections Officer Isgrigg's issuance of false conduct violations against plaintiff in retaliation for plaintiff's legal activities. Before examining the applicable law, the Court notes that no evidence is before the Court that defendant King was involved in the issuance of these violations.

Prison officials cannot file retaliatory disciplinary proceedings against an inmate who filed a grievance or instituted litigation. *See* Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989). However, if the issuance of the conduct violation is based on "some evidence" of the violation, plaintiff's retaliation claim fails. Henderson v. Baird, 29 F.3d 464, 469 (8th Cir. 1994); *see also* Farver v. Schwartz, 255 F.3d 473, 474 (8th Cir. 2001) (per curiam) (dismissing retaliation claim because it was supported by a report from staff and test results). Courts have found "some evidence" of a violation of a rule to exist in a variety of circumstances as described in Moore v. Plaster, 266 F.3d 928, 932-33 (8th Cir. 2001). In one case, the United States Court of

9

Appeals for the Eighth Circuit found some evidence of a rule violation to exist on the basis of an officer's affidavit, a disciplinary report, and reliable confidential informants. *See* Earnest v. Courtney, 64 F.3d 365, 367 (8th Cir. 1995) (per curiam).

The inmate informant passed a CVSA and correctly identified the location of several weapons which he alleged were to be used in a conspiracy by plaintiff and others to murder or kidnap three prison officials.[4] While plaintiff passed the CVSA test before the issuance of the conduct violations, the investigation was still underway at that time. The Court finds as a matter of law that some evidence of plaintiff's violations of the PCC's rules against conspiring to murder or assault prison guards, rioting, and creating a disturbance exists and provides a sufficient basis for the issuance of the conduct violations. The Court also notes that the violations were expunged nine days after they were issued and that plaintiff has not alleged that he was punished in any way because of the issuance of the violations.

**C. Motivations of non-decision makers cannot establish a causal connection in a retaliation case**

---

[4] Defendant King also asserts that shortly after he started the investigation, he received confidential information from offender sources indicating that, in the opinion of those offenders, the institution had correctly identified and confined in administrative segregation those who had plotted to harm staff. Plaintiff asserts that these sources are unreliable and may not exist.

Plaintiff alleges that defendant King informed the parole board of his investigation in retaliation for plaintiff's legal activities and caused the parole board to deny plaintiff's parole request. The parole board explained that it denied plaintiff's parole request because it found that his release would deprecate the seriousness of his offense and because it did not appear to the parole board that there was a reasonable probability that plaintiff would "live and remain at liberty without again violating the law." As the United States Court of Appeals for the Sixth Circuit has found, a non-decision maker cannot establish a causal connection in a retaliation case. Smith v. Campbell, 250 F.3d 1032, 1038 (6th Cir. 2001). Because defendant King is not on the parole board and does not make their decisions for them, he could not have caused the parole board to deny plaintiff's parole request. Regardless of whether defendant King informed the parole board of the ongoing investigation, this Court finds as a matter of law that plaintiff has not stated a valid claim of retaliation against defendant King with respect to the parole board's decision.

**D. Assignment of plaintiff to administrative segregation during pendency of investigation did not violate his due process rights**

Plaintiff asserts that his detention in administrative segregation after having passed the CVSA violated his due process rights. "[P]risoners do not shed all constitutional rights at the prison gate, but lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a

11

retraction justified by the considerations underlying our penal system." Sandin v. Conner, 515 U.S. 472, 485 (1995) (citations omitted). The focus should be on whether the alleged deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484. Administrative segregation is not an atypical or significant hardship on an inmate. Portley-El v. Brill, 288 F.3d 1063, 1065 (8th Cir. 2002).

However, plaintiff also asserts that the length of his segregation was atypical because plaintiff's CVSA results did indicate that plaintiff was not involved in the murder/kidnaping conspiracy. The investigation continued after the first CVSA test and defendant King had a second CVSA test performed. The length and conditions of plaintiff's administrative segregation did not violate his due process rights. Furthermore, no evidence is before the Court that plaintiff was involved in the decision to extend plaintiff's administrative segregation. As noted above, a non-decision maker cannot establish a causal connection in a retaliation claim.

**E. Plaintiff's Fourteenth Amendment equal protection claim fails to state a claim**

Plaintiff's second amended complaint appears to also allege a claim under the Fourteenth Amendment of a violation of his equal protection rights. Plaintiff has failed to make the requisite threshold showing that he has been treated differently

12

than others similarly situated to him on the basis of a protected class. Klinger v. Dep't of Corr., 31 F.3d 727, 731 (8th Cir. 1994); Keevan v. Smith, 100 F.3d 644, 648 (8th Cir. 1996). The Court will dismiss plaintiff's claim for failure to state a claim upon which relief can be granted.

**F.     Remaining claims**

For the above reasons, the Court will dismiss all plaintiff's claims under 42 U.S.C. § 1983. In plaintiff's second amended complaint he also alleges violations of state law, however plaintiff cannot bring an action redressing deprivation of state rights under § 1983. Bagley v. Rogers, 5 F.3d 325, 328 (8th Cir. 1993). To the extent that plaintiff's second amended complaint does assert state law causes of action against defendant King, this Court declines to exercise supplemental jurisdiction over them. *See* 28 U.S.C. § 1367(c)(3); Gatlin ex rel. Estate of Gatlin v. Green, 362 F.3d 1089, 1095 (8th Cir. 2004).

**G.     Other pending motions**

The Court turns to plaintiff's motions to compel discovery and to strike his deposition taken by defendant King. As discussed above, defendant King is entitled to dismissal before the commencement of discovery because plaintiff's allegations do not state a claim of violation of clearly established law. Furthermore, defendant King has not relied on plaintiff's deposition to establish his qualified immunity defense. To the

extent that defendant King has referenced the deposition in arguing his motion for summary judgment, the Court notes that plaintiff has now had the opportunity to review his deposition for over a month, as it was attached to defendant King's memorandum in support of his motion for summary judgment.  Plaintiff could have informed the Court of any inaccuracies in the deposition during that time, but has not taken advantage of that opportunity.  The Court will deny both motions.

Accordingly,

**IT IS HEREBY ORDERED** that defendant King's motion for summary judgment [Doc. #46] is granted.

**IT IS FURTHER ORDERED** that plaintiff's motion to compel discovery [Doc. #35] is denied.

**IT IS FURTHER ORDERED** that plaintiff's motion to strike his deposition taken by defendant King [Doc. #44] is denied.

**IT IS FURTHER ORDERED** that defendant King's motion for a protective order [Doc. #58] is granted as follows, and plaintiff's notice of deposition of defendant King served on March 28, 2005 is quashed.

**IT IS FURTHER ORDERED** that defendant King's motion to stay discovery, or, in the alternative, for a protective order [Doc. #52] is denied as moot.

**IT IS FURTHER ORDERED** that plaintiff may file a motion to amend his second amended complaint, attach a third amended

14

complaint to the motion identifying defendants John or Jane Doe #1 and John or Jane Doe #2, and file a completed civil summons and United States Marshals Service Form 285 for John or Jane Doe #1 and John or Jane Doe #2 no later than **May 5, 2006**.

**IT IS FURTHER ORDERED** that failure to identify defendants John or Jane Doe #1 and John or Jane Doe #2 by May 5, 2006, will result in the dismissal of plaintiff's claims against John or Jane Doe #1 and John or Jane Doe #2.

Dated this ____18th____ day of April, 2006.

                                    /s/Donald J. Stohr
                                    UNITED STATES DISTRICT JUDGE