# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| MCKINLEY ROBINSON, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) No. 4:05CV702-DJS ) |
| GARY KEMPKER and DONALD ROPER, | ) ) |
| Defendants. | ) |

### ORDER

Pro se plaintiff McKinley Robinson was an inmate at the Potosi Correctional Center ("PCC") in Potosi, Missouri, at all times relevant to the instant action,[1] and has made claims against defendants Gary Kempker, the former Director of the Missouri Department of Corrections, and Donald Roper, the Superintendent of the PCC, in their individual and official capacities.[2] Plaintiff asserts a 42 U.S.C. § 1983 claim that defendants, in retaliation for plaintiff's legal activities and in violation of the First, Eighth, and Fourteenth Amendments, initiated an investigation of plaintiff's involvement in a plot to murder PCC staff and caused plaintiff's prolonged detention in administrative segregation, the issuance of conduct violations against plaintiff, and the denial of

---

[1] Plaintiff is currently incarcerated at Jefferson City Correctional Center.

[2] Judgment has already been entered against plaintiff on his claims against Thomas King, an investigator at the PCC.

plaintiff's parole.[3] Plaintiff also asserts a Religious Land Use and Institutionalized Persons Act ("RLUIPA") claim, pursuant to 42 U.S.C. § 2000cc, that defendants forced plaintiff to consume food violating religious dietary law. Now before the Court are cross-motions for summary judgment.[4]

**Background**

All matters set forth in a party's statement of uncontroverted material facts not specifically controverted by the opposing party are deemed admitted for the purpose of summary judgment. E.D.Mo. L.R. 7-4.01(E). The Court has observed the local rule as stated above and construed plaintiff's pro se filings liberally. As the Court finds in favor of defendants on both pending motions, the facts have been viewed in a light most favorable to the plaintiff. The following facts are thereby established for purposes of the summary judgment motions.

Plaintiff was incarcerated at the PCC from 1992 to June 2006. On December 5, 2002, an inmate informant told a PCC custody staff person about a plot to kill or take hostage Associate Superintendent Pat Smith, Chaplain Jerry Pearson, and Institutional Activities Coordinator Rick Secoy. The inmate informant identified by name offenders who were involved in the plot, including

---

[3] The Court addressed very similar claims against Mr. King in its order of April 18, 2006 [Doc. #78].

[4] Plaintiff has filed a motion for partial summary judgment on his RLUIPA claim.

plaintiff. Corrections Supervisor I Dennis Mayberry performed a Computer Voice Stress Analysis ("CVSA") truth verification test with respect to the initial inmate informant, and the inmate passed the test.

On December 6, 2002, Thomas King, as the assigned investigator at the PCC, interviewed the initial inmate informant. Based on the information provided by the informant, the Department of Corrections emergency squad at the PCC conducted a search of the entire institution. Mr. King observed the emergency squad's search. The squad found six to eight pieces of flat steel stock under a filing cabinet in the library. This is where the informant had indicated some of the weapon stock was being held until needed. The pieces of stock were unsharpened, and were approximately 1" x 10" x 1/8" in dimension.[5] In addition, the search revealed a sharpened steel shank in the chapel common area. The informant also told investigators that one or more prison-made weapons could be found in the chapel, without giving a specific location. The same day, plaintiff was assigned to the PCC's administrative segregation unit pending an investigation into his involvement in the plot to murder staff or take staff hostage.

---

[5] Plaintiff asserts that these steel shanks are parts of the metal cabinets in the library stored there by "the library service lady (Ms. Brooks) for safe keeping from inmate abuse." (Pl.'s Opp. [Doc. 116] ¶3.) Plaintiff has not explained how he knows this.

3

On December 9, 2002, Mr. King interviewed plaintiff concerning his involvement in the alleged plot. Mr. King administered a CVSA to plaintiff and concluded that plaintiff was truthful in his responses to all relevant questions.

On December 19, 2002, plaintiff attended a hearing before a parole board. Plaintiff is serving two life sentences on two counts of First Degree Murder, a seventy-five year sentence for Assault with Intent to Kill with Malice, a twenty-year sentence for Assault, and a five-year sentence for Possession of a Weapon on Premises of a Correctional Institution. The parole board denied plaintiff's parole request and rescheduled the hearing for 2004 because the board found that plaintiff's release would deprecate the seriousness of his offenses and because it did not appear to the parole board that there was a reasonable probability that plaintiff would "live and remain at liberty without again violating the law." (Defs.' Ex. E-3 [Doc. #47-8] at 34-35.) The board also denied parole in plaintiff's subsequent 2004 and 2006 parole hearings. At both those hearings, the 2002 hearing and the 2002 accusations were not mentioned.

On January 2, 2003, the Classification Hearing Committee held a hearing to consider plaintiff's continued confinement in administrative segregation. The Classification Hearing Committee assigned plaintiff to thirty days in administrative segregation pending the investigation into his involvement in the plot to murder staff. On January 29, 2003, Mr. King and defendant Roper

4

were named as defendants in the Muhammad v. Kempker lawsuit, Case No. 4:02CV1714-CDP, also before this Court.[6] However, plaintiff, who was not a party to the Muhammad lawsuit, only assisted the other inmates named as plaintiffs. The following day, on January 30, 2003, Mr. King notified plaintiff that he passed the CVSA examination conducted on December 9, 2002.

On February 28, 2003, the Classification Hearing Committee approved a nine-month extension of plaintiff's administrative segregation assignment pending the outcome of the investigation. On April 1, 2003, the Committee decided to continue plaintiff's administration segregation assignment. On April 2, 2003, Corrections Officer II Jamie Isgrigg issued plaintiff a conduct violation for violation of Rule #1 Murder (Conspiracy), Rule #2 Assault (Conspiracy), Rule #5 Riot, and Rule #19 Creating a Disturbance. On April 11, 2003, plaintiff's conduct violations were expunged. Plaintiff remained in administrative segregation until April 28, 2003. During plaintiff's administrative segregation, Mr. King gathered further information and a second CVSA analyst verified plaintiff's initial CVSA results. By October 22, 2003, plaintiff had returned to the general population and had not received a violation for conspiracy to murder or assault staff.

---

[6] Plaintiff's RLUIPA claim is similar to claims brought by several PCC inmates against defendant Kempker, among others, in Muhammad.

Plaintiff has written several letters to defendants concerning these events.

Plaintiff is a Muslim and professes to adhere to halal dietary practices, which require him to refrain from consuming pork products, or foods containing pork byproducts. The Department of Corrections retains a policy entitled "Menu Planning" in order "to ensure the planning and provision of nutritionally adequate meals." (Defs.' Ex. I [Doc. #113-13] at 1.) The Menu Planning policy provides for meat alternatives for those individuals who decline the standard meat or egg portion for religious or other reasons. The meat alternative can be one of the following, as determined by the food service manager: 2 cups of cooked dried beans; 2-3 ounces of cheese; or 1/3 cup of peanut butter. "As served" menus at the PCC demonstrate a six-week meal cycle and the availability of a meat alternative in all instances in which pork is served.

While pork is offered at least once a week on the menu at the PCC, alternatives to pork are always available. Whenever plaintiff is aware pork is being offered, he elects another option. Plaintiff believes that pork byproducts such as lard and pork whey are being served to him hidden in pastries and other food additives. (Defs.' Dep. of Pl. [Doc. #113-3] at 9.) PCC staff stopped using milk with a pork additive in it when Muslim inmates brought the existence of that additive to the staff's attention. When plaintiff is in doubt about whether a food containes pork or

6

a pork byproduct he does not eat it. Otherwise, plaintiff eats everything else on the menu that is in keeping with his beliefs.

## **Discussion**

In considering a motion for summary judgment, the Court must "view all of the evidence in the light most favorable to the nonmoving party and [will] give that party the benefit of all reasonable inferences to be drawn from the facts disclosed in the pleadings." Reich v. ConAgra, Inc., 987 F.2d 1357, 1359 (8th Cir. 1993). "Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Id. "Although the moving party has the burden of demonstrating the absence of genuine issues of material fact, the 'nonmoving party may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial.'" Burchett v. Target Corp., 340 F.3d 510, 516 (8th Cir. 2003) (quoting Rose-Maston v. NME Hosps., Inc., 133 F.3d 1104, 1107 (8th Cir. 1998)). Allegations supported merely by speculation, conjecture, or conclusory fantasy do not suffice. See Wilson v. Int'l Bus. Machines Corp., 62 F.3d 237, 241 (8th Cir. 1995). Upon careful consideration of plaintiff's claims against defendants, the Court finds that judgment should be entered in favor of defendants on both counts.[7]

---

[7] In plaintiff's briefing of the instant motions, he mentions that discovery has not been completed even though discovery closed January 30, 2007 and no motions concerning

A.  **Plaintiff's § 1983 Claim**

Plaintiff's § 1983 claim asserts that defendants have retaliated against plaintiff for his legal activities by violating plaintiff's First, Eighth, and Fourteenth Amendment rights.[8] Specifically, plaintiff alleges that defendants, as the Director of the Missouri Department of Corrections and the Superintendent of the PCC, manufactured murder conspiracy charges against plaintiff and caused (1) Mr. King to initiate an investigation into the murder plot, (2) the Classification Hearing Committee to detain plaintiff in administrative segregation for an extended period of time, (3) Corrections Officer Isgrigg to issue conduct violations, and (4) the parole board to deny plaintiff's parole request. The Court concludes that plaintiff has not shown any evidence that his participation in the Muhammad lawsuit caused the alleged retaliation, that defendants were directly involved in the alleged acts of retaliation, or that the alleged acts were in violation of the Constitution or § 1983. Consequently, the Court will enter judgment in favor of defendants on plaintiff's § 1983 claim for the reasons discussed below.

---

discovery disputes are outstanding. Plaintiff also alludes to claims concerning his access to his legal materials, although no such claims are set forth in plaintiff's pleadings.

[8] Plaintiff does not offer an explanation as to how defendants' alleged actions have violated the First and Eighth Amendments. Similarly, although plaintiff cites the Fourteenth Amendment, he fails to set forth an equal protection claim.

**1. Plaintiff cannot show causation for retaliation**

Plaintiff alleges that defendants manufactured charges against plaintiff for conspiring to murder PCC staff in retaliation for plaintiff's legal activities involving Muhammad v. Kempker. Prison officials may not retaliate against an inmate for engaging in constitutionally-protected activity, such as filing a grievance or instituting litigation. See Goff v. Burton, 7 F.3d 734, 736 (8th Cir. 1993); Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989). A prison official's action violates § 1983 when performed in retaliation for "the exercise of a constitutionally protected right . . . even if the act, when taken for a different reason, would have been proper." Madewell v. Roberts, 909 F.2d 1203, 1206 (8th Cir. 1990) (citations omitted). Plaintiff must first show that he engaged in constitutionally protected conduct and then show that but for that conduct defendants would not have retaliated against him.[9] Naucke v. City of Park Hills, 284 F.3d 923, 928 (8th Cir. 2002); Rouse v. Benson, 193 F.3d 936, 940 (8th Cir. 1999).

Defendant Roper was not made a party to the Muhammad v. Kempker case until over a month and a half after the investigation of plaintiff was initiated. Furthermore, the investigation was initiated only after an inmate informant told prison officials that

---

[9] Plaintiff's activity as a jailhouse lawyer in the Muhammad litigation only receives constitutional protection when it is alleged that there is no other reasonable, alternative means of legal assistance. See Munz v. Nix, 908 F.2d 267, 269 n.3 (8th Cir. 1990).

9

several inmates, including plaintiff, were plotting to murder or take hostage three prison officials.[10] Given these allegations and defendants' positions as the Director of the Missouri Department of Corrections and the Superintendent of the PCC, plaintiff cannot show that, but for plaintiff's alleged involvement in the <u>Muhammad v. Kempker</u> case and its associated grievance filings, the charges would not have been made against plaintiff.

**2. Respondeat superior liability unavailable**

Supervisory personnel are not liable under § 1983 absent "a showing of direct responsibility for the improper action" or "personal involvement of the officer being sued." <u>Harris v. Pirch</u>, 677 F.2d 681, 685 (8th Cir. 1982) (citations omitted). See <u>Otey v. Marshall</u>, 121 F.3d 1150, 1155 (8th Cir. 1997) ("Section 1983 liability cannot attach to a supervisor merely because a subordinate violated someone's constitutional rights.") (citation omitted); <u>Madewell v. Roberts</u>, 909 F.2d 1203, 1208 (8th Cir. 1990) ("Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights."); <u>Glick v. Sargent</u>, 696 F.2d 413, 414-15 (8th Cir. 1983) (finding respondeat superior theory inapplicable in § 1983 actions).

A supervisor may be found liable for failure to supervise or control his subordinates only where plaintiff establishes his "deliberate indifference or tacit authorization of the offensive

---

[10] Plaintiff does not deny the existence of the informant and even claims to know the informant's identity.

acts by failing to take remedial steps following notice of a pattern of such acts by his subordinates." Wilson v. City of N. Little Rock, 801 F.2d 316, 322 (8th Cir. 1986). "In order for a supervisor to be held liable for the acts of a subordinate, something more must be shown than merely the existence of the supervisor-subordinate relationship." Clay v. Conlee, 815 F.2d 1164, 1170 (8th Cir. 1987). Absent such allegations, no individual liability can be imposed on defendants, as the former Director of the Missouri Department of Corrections and the Superintendent of the PCC. Mr. King performed the investigation and Jamie Isgrigg issued the conduct violations that were expunged. Even considering the letters plaintiff sent to defendants, plaintiff has not pointed to any evidence demonstrating either defendant's direct personal involvement in plaintiff's treatment that forms the basis of his § 1983 claim.

   **3. Defendants' motivations cannot establish a causal connection because they were not on the parole board**

Plaintiff alleges that defendants informed the parole board of the investigation in retaliation for plaintiff's legal activities and caused the parole board to deny plaintiff's parole request. The parole board explained that it denied plaintiff's parole request because it found that his release would deprecate the seriousness of his offense and because it did not appear to the parole board that there was a reasonable probability that plaintiff would "live and remain at liberty without again violating the law."

11

(Defs.' Ex. E-3 [Doc. #47-8] at 34-35.) As the Sixth Circuit has found, a non-decision maker cannot supply a causal connection in a retaliation case. <u>Smith v. Campbell</u>, 250 F.3d 1032, 1038 (6th Cir. 2001). Because defendants are not on the parole board and do not make their decisions for them, defendants could not have caused the parole board to deny plaintiff's parole request. Regardless of whether defendants informed the parole board of the ongoing investigation, this Court finds as a matter of law that plaintiff has not stated a valid claim of retaliation against defendants with respect to the parole board's decision.

  **4. Assignment to administrative segregation during pendency of investigation did not violate due process rights and was not retaliatory**

Plaintiff asserts that his continued detention in administrative segregation after having passed the CVSA violated his due process rights and was retaliatory. "[P]risoners do not shed all constitutional rights at the prison gate, but lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." <u>Sandin v. Conner</u>, 515 U.S. 472, 485 (1995) (citations omitted). The focus should be on whether the alleged deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Id.</u> at 484. Administrative segregation

12

is not an atypical or significant hardship on an inmate. <u>Portley-El v. Brill</u>, 288 F.3d 1063, 1065 (8th Cir. 2002).

Plaintiff also asserts that the length of his segregation was atypical because plaintiff's CVSA results did indicate that plaintiff was not involved in the murder/kidnaping conspiracy. Because the investigation continued after the first CVSA test and a second CVSA test was performed, the length and conditions of plaintiff's administrative segregation did not violate his due process rights. Furthermore, no evidence is before the Court that defendants, as the Director of the Missouri Department of Corrections and the Superintendent of the PCC, were involved in the Classification Hearing Committee's decision to extend plaintiff's administrative segregation. As noted above, a non-decision maker cannot supply a causal connection in a retaliation claim.

**B.  RLUIPA Claim**

Plaintiff's RLUIPA claim asserts that plaintiff has been served food containing pork and pork byproducts in violation of his Islamic beliefs and that defendants have failed to take corrective measures and establish a screening committee to ensure that pork is not contained within the food served to the inmates. The RLUIPA provides that no substantial burden on an inmate's right to religious exercise may be established unless that burden is in furtherance of a compelling governmental interest and is the least-restrictive means of furthering that compelling governmental

interest. 42 U.S.C. § 2000cc-1(a); Murphy v. Mo. Dep't of Corr., 372 F.3d 979, 986-87 (8th Cir. 2004). Defendants assert plaintiff's claim should be dismissed because relief under the RLUIPA is only available "against a government." However,

> The statute's definition of a "government," . . . makes clear that individual government officials may be subject to suit under RLUIPA. The term "government" is defined as "(i) a State, county, municipality, or other governmental entity created under the authority of a State; (ii) any branch, department, agency, instrumentality, or *official of an entity* listed in clause (i); and (iii) any other person acting under color of State law." 42 U.S.C. § 2000cc-5(4)(a).

Guru Nanak Sikh Soc'y of Yuba City v. County of Sutter, 326 F. Supp. 2d 1128, 1136 (E.D. Cal. 2003) (declining to follow Hale O Kaula Church v. Maui Planning Comm'n, 229 F. Supp. 2d 1056, 1067 (D. Haw. 2002)). The Court finds that defendants fall under the second category and thus are subject to the RLUIPA claim.

As a threshold matter, plaintiff must demonstrate a substantial burden on his ability to exercise his religion. Id. at 988. Plaintiff admits that he avoids all foods containing pork or that he believes contain pork products. Both parties agree that when milk known to contain a pork byproduct was identified and brought to staff attention, the milk was replaced by a non-offending brand and plaintiff did not consume the milk until then. Plaintiff's unsupported allegation that other products contain pork byproducts is merely unpersuasive speculation. Furthermore,

14

plaintiff does not refute that pork substitutes are offered when pork is served on the menu. In fact, plaintiff concedes that he eats all the remaining food and does not assert any injury associated with malnutrition.

In light of the above, the Court finds that plaintiff's RLUIPA claim fails. To the extent plaintiff's claim concerning the exercise of his religion is asserted pursuant § 1983, plaintiff has not shown how defendants were involved in any violations of the RLUIPA or the First Amendment. To the extent supervisory liability is alleged, plaintiff's claim fails as discussed above.

**C. Remaining Claims**

For the above reasons, the Court will grant defendants' summary judgment motion on all of plaintiff's claims. In plaintiff's third amended complaint, he also alleges violations of state law, however plaintiff cannot bring an action redressing deprivation of state rights under § 1983. Bagley v. Rogers, 5 F.3d 325, 328 (8th Cir. 1993). To the extent that plaintiff's third amended complaint does assert state law causes of action against defendants, this Court declines to exercise supplemental jurisdiction over them. See 28 U.S.C. § 1367(c)(3); Gatlin ex rel. Estate of Gatlin v. Green, 362 F.3d 1089, 1095 (8th Cir. 2004).

Accordingly,

**IT IS HEREBY ORDERED** that defendant Kempker and Roper's motion for summary judgment [Doc. #112] is granted.

**IT IS FURTHER ORDERED** that plaintiff's motion for partial summary judgment [Doc. #114] is denied.


Dated this ___8th___ day of May, 2007.


                                                              /s/Donald J. Stohr
                                                              UNITED STATES DISTRICT JUDGE